Louis Hamburger v. Commissioner. Samuel Hamburger v. Commissioner.
Hamburger v. Commissioner
Docket Nos. 112221, 112222.
United States Tax Court
1943 Tax Ct. Memo LEXIS 18; 2 T.C.M. (CCH) 1139; T.C.M. (RIA) 43519; December 24, 1943
*18 Edward S. Reid, Jr., Esq., and Harold M. Shapero, Esq., 2201 National Bank Bldg., Detroit, Mich., for the petitioners. John H. Pigg, Esq., for the respondent. STERNHAGEN The Commissioner determined the following deficiencies in income tax: 1937
1938
1939
1940
Louis Hamburger
$2,526.70
$14,597.91
$6,919.84
$12,581.70
Samuel Hamburger
2,591.80
15,014.13
7,068.85
12,941.00 He included in the taxpayers' individual incomes the income of trusts established by them. Findings of Fact The petitioners are brothers residing in Detroit, Michigan. Each filed his income tax returns in the District of Michigan. Louis Hamburger is married and has four children, aged about 14, 13, 11 and 9 years, respectively. Samuel Hamburger is married and has two children, born December 23, 1932, and October 22, 1938, respectively. The taxpayers went into the waste material business as partners about 1926. Before December 27, 1937, the business was transferred to H. B. Hamburger & Company, a Michigan Corporation, and the taxpayers each received 5,813 shares, or half, of the capital stock. They continued to operate the business as they had before. Louis was president and Samuel was *19 secretary-treasurer. On December 27, 1937, Louis established five separate trusts for the benefit of members of his family, and transferred to them his shares as follows: Shares
Ethel Hamburger, wife, Trust
1,165
Gloria Hamburger Trust
1,162
Harry Hamburger Trust
1,162
Richard Hamburger Trust
1,162
Joan Hamburger Trust
1,162
5,813
On the same date Samuel established two separate trusts for the benefit of members of his family, and transferred to them his shares as follows: Miriam Hamburger, wife, Trust
2,907
Hilliard Hamburger Trust
2,906
5,813
On November 3, 1938, Samuel established another trust, having reserved the right so to do in the above declaration, for his newly born daughter, Sola Jane. It is recited in this trust that after the establishment of the prior trusts each trust has acquired 726 shares of preferred stock of the H. B. Hamburger & Company, and it is provided that one-third of the common and preferred shares be removed from each trust and 1,937 2/3 shares common and 484 shares preferred be transferred to Louis Hamburger as trustee for the Sola Jane Hamburger Trust. The provisions of all the trusts were alike except for the names *20 of the beneficiaries and number of shares transferred, and in the trusts of each the brother was named trustee. Each trust was signed by both brothers as settlor and as trustee. The instruments provide: 1. Said Trustee shall have full and complete legal title to said stock, with full right to sell, exchange, mortgage, assign, encumber or otherwise dispose of the same, to the same extent that he could do if said Trustee was the full, legal and equitable owner thereof, and shall have full power to invest the proceeds of the sale thereof or dispose of any other property received in exchange therefor in any manner said Trustee sees fit, without any limitation or restriction whatsoever; said Trustee shall not be limited to making investments such as trustees are ordinarily limited to under the laws of the State of Michigan; that the powers of said Trustee shall include (without limiting the general powers above enumerated) the right to accept a proportionate share of the physical assets upon liquidation of H. B. Hamburger & Company, to use said assets in business either by himself or by entering into a partnership or association with others, to sell, the same upon credit, to invest the *21 proceeds thereof in notes of individuals or corporations, to loan money to individuals or corporations, to invest the income or the proceeds of the trust property in stocks, bonds, or any other securities of any nature or description in the sole discretion of said Trustee; that all of said powers shall apply equally to any other property coming into the hands of the Trustee by reason of being exchanged by said Trustee for the original trust property, and all of said powers granted by this instrument to said Trustee shall apply equally to the principal of the trust property, any income therefrom or any other property which may come into the possession of said Trustee under the powers given to said Trustee hereunder. 2. * * * that said Trustee shall have uncontrolled discretion in connection with the management, care, control and disposition of the said trust property, including any other property which comes into the control of the Trustee under the powers herein granted to said Trustee. 3. That the said Trustee shall, during the lifetime of Settlor, pay the net income to Settlor's wife [child], beneficiary hereunder, or other beneficiary named pursuant to and within the limitations *22 hereinafter contained, or, instead of paying said net income in such manner may, in the sole discretion of said Trustee, accumulate such net income, which accumulations of income shall become part of the trust property, but said accumulations of income, less any net losses sustained prior to distribution, may be distributed by the Trustee in his sole discretion subsequently and prior to the termination of this trust to the then beneficiary or beneficiaries at the time such distribution is made. In determining net income the same shall be taken to constitute the gross income from the trust property less expenses of administering the trust, including reasonable compensation to said Trustee and less any and all taxes, interest, or other expenses incidental to the management, sale, or preservation of said trust property. After the death of Settlor and until termination of this trust, the said Trustee shall pay to the then beneficiary or beneficiaries hereunder monthly any portion of the principal or income in the discretion of said Trustee, such sum, however, to be not less than Eighty-three Dollars and Thirty-three Cents ($83.33) monthly, [$50 in Louis' trusts] nor less than fifty percent *23 (50%) of the compensation charged by said Trustee for his reasonable compensation in administering this trust, nor less than Fifty percent (50%) of the net monthly income, whichever sum shall be the higher, and said Trustee shall have no discretion with respect to the payment thereof and shall, if necessary, sell and liquidate the trust property to the extent necessary to make such payment. 4. That any payments made by the Trustee to the beneficiary or beneficiaries hereunder, in accordance with the provisions hereof, shall, if such beneficiary shall not at that time have attained the age of twenty-one (21) years, be paid to the mother of such beneficiary if the mother be living for the benefit of said beneficary, or to the duly appointed guardian of said beneficiary, but any payments made by said Trustee to a beneficiary who has attained the age of twenty-one (21) years shall be paid directly to such beneficiary. None of the moneys paid to said beneficiaries by the said Trustee shall be used for the support and maintenance of such beneficiary if the then beneficiary at the time of such payment is a child or wife of the Settlor and at that time Settlor has any obligation to support *24 or maintain said wife or child, or any other person for whom Settlor has any obligation of support or maintenance. * * * * *
7. In the event of the birth of children to Settlor after date hereof, upon the birth of the first child said child shall, without any further act on the part of the Settlor, become a beneficiary of one-third (1/3rd) [1/6th in Louis' trusts] of the beneficial interest in this trust, and if a second child is born, such second child shall likewise become beneficiary of a one-fourth (1/4th) [1/7th in Louis' trusts] interest hereunder, etc. This provision is subject to the Settlor's reserved right to change beneficiaries as herein provided. * * * * *
9. That the Settlor hereby expressly reserves the right from time to time during his lifetime, subject, however, to the limitations herein contained, by instrument in writing executed by Settlor and delivered to the trustee or by appropriate provision in Settlor's last Will and Testament, to change the beneficiary or beneficiaries under this trust, to add a beneficiary, or to increase or decrease the beneficial interest of any beneficiary hereunder, including the right to name a charitable organization as a beneficiary *25 or one of the beneficiaries hereunder; such right to change the beneficiary or beneficiaries may be waived and renounced at any time by the Settlor during his lifetime by written instrument executed by said Settlor and delivered to said trustee; provided, however, that the power reserved herein to change the beneficiary or beneficiaries is hereby expressly limited in that the Settlor shall have no power to name himself or his estate as beneficiary hereunder. 10. That the said Settlor or his estate shall not directly or indirectly become vested or revested with any legal or beneficial interest in the trust property or its proceeds, either of income or principal, nor shall any income, principal, or interest, beneficial or legal, in the trust property be held or accumulated for future distribution to the Settlor or to his estate, nor shall the same be distributed to Settlor or to his estate, nor shall any part of the principal, income, or proceeds of the trust property, or any part thereof, ever be applied to the payment of premiums upon policies of insurance upon the life of the Settlor, nor be used or applied for the support of the Settlor or for the benefit of Settlor or his estate, *26 nor used to satisfy any obligation of the Settlor or his estate. * * * * *
12. This trust shall continue until the death of the survivor of Louis Hamburger and Samuel Hamburger, and upon the death of the survivor of Louis Hamburger and Samuel Hamburger said trust shall immediately terminate and thereupon both the legal and the equitable title to the trust property, including undistributed accumulations, principal and income and any other property in said trust estate, shall immediately vest in the person or persons who at that time are beneficiary or beneficiaries under this trust, and if more than one person are at that time beneficiary, each shall take an undivided interest therein according to the respective shares which they held as such beneficiaries, and the Trustee or his successor, and all other persons claiming by, through, or under them, shall immediately confirm said title by transferring, assigning and paying over to such beneficiary all of the property, as above described in said trust estate. * * * * *
14. This trust is hereby declared to be irrevocable and there shall be no power to terminate, alter, or amend this trust instrument, nor shall there be any power *27 on the part of anyone to revest in the Settlor or his estate any part of the corpus of the trust. Each agreement contained spendthrift provisions. Neither taxpayer has ever changed the beneficiary or trustee of any of his trusts. After the transfer of the shares to the trusts the remaining assets of each taxpayer consisted of a home, owned jointly with his wife, and life insurance policies amounting to about forty to forty-five thousand dollars, which was not paid up insurance. Neither taxpayer had any source of income other than the aforesaid business. As contemplated at the time of the creation of the trusts, the taxpayers individually and as trustees made an agreement dated December 27, 1938, to carry on as partners from and after December 30, 1938, the waste and steel products business under the firm name of H. B. Hamburger & Company and Production Steel Company, the partnership capital to consist of all the property of the corporation. The assets were to be transferred by the corporation to the taxpayers as trustees pursuant to a plan of liquidation of December 27, 1938, under which Louis' trusts were each to receive 10 percent interest and Samuel's trusts each a 16 2/3 percent *28 interest in such assets. Under the partnership agreement the taxpayers, as trustees, agreed to transfer to the partnership all the assets received from the corporation. PROVIDED HOWEVER that so much of said property that consists of real estate or an interest in real estate may be retained in the name of LOUIS HAMBURGER and SAMUEL HAMBURGER individually but who shall hold the same in trust for the partnership under the terms hereof, this being done merely as a matter of convenience in order to avoid the creation of a cloud upon the title to such real estate and so as to keep the record title to said real estate marketable and to facilitate any future transfer that may be made for the purposes of the partnership, the said first and second parties however hereby expressly agreeing that they will not make any transfers of said real estate or any interest therein, nor encumber the same in any way except for the purposes of the partnership and further acknowledge that they are holding said real estate and interest therein as trustees for the use and benefit of said partnership. The partnership was to be actively managed by the taxpayers, and they were to receive no compensation other *29 than 15 percent each of the profits. Each of Louis' trusts was entitled to 7 percent of the profits and each of Samuel's trusts to 11 2/3 percent. In the event of the liquidation of the partnership, the taxpayers were to have no right to participate in the distribution of capital except to the extent of their "share of profits and capital increase over and above the fair valuation of the capital at the time of the formation of the partnership over and above all liabilities, and only" to the extent of 15 percent each. The taxpayers agree to give "the utmost of their skill and power" to the partnership and not to "carry on or be concerned or interested, directly or indirectly, in any other trade or business without the consent in writing of the other parties" to the partnership agreement. After the dissolution of the corporation, the business was conducted by the taxpayers as theretofore. Each trust had a separate bank account. Some of the partnership profits were paid to the trusts, as determined by the taxpayers. None of the income of any of the trusts was ever distributed to any of the beneficiaries. Samuel at times borrowed money from "the trusts," some of which he had repaid, *30 but he now owes "the trusts" about $15,000 to $18,000. The corporation's earned surplus as of December 31, 1938 was $103,522.17. Each taxpayer filed his 1937 income tax return on March 15, 1938, in which the only income reported by each was $17,500, salary received from H. B. Hamburger & Company. The $14,532.50 dividends received by Louis' five trusts and the $14,532.50 dividends received by Samuel's two trusts were omitted from gross income. Each notice of deficiency was mailed on May 25, 1942. Opinion STERNHAGEN, Judge: The principal point of contention is the attack by the taxpayers upon the Commissioner's determination that the income of the business carried on by the two taxpayers, at one time in corporate form and at another in partnership form, is taxable respectively to them. We are of opinion that the determination must be sustained upon the authority of ; ; , affirming . The trusts accomplished a distribution of business *31 income by these brothers entirely within their families. This was clearly but a tax-saving device and invites the closest scrutiny. The taxpayers at all times retained complete dominion and control of the business, the properties and the income. Although each transferred his interest in trust for his family, the interests so transferred were alike and each taxpayer was the trustee of the other's trust. Thus, except for the legal appellation under which he acted, his control was entirely similar to what he would have had if he had continued his nominal ownership of a half interest in the business. The operation continued to be that of a single economic unit, and the benefits of each brother blended with the normal concepts of ownership. Even though the trusts were for long terms, as distinguished from the five years of the Clifford case, the considerations of control and essential ownership are no different. The taxpayer in each case had the right to designate and change the beneficiary, to withhold income from the beneficiary, to whom in fact no income was ever distributed, and as in Samuel's case to use the income of the trust by borrowing from it ad lib. Without expounding *32 again the considerations which influence the application of the Clifford doctrine, we say only that we have compared the factors of the cited cases with those in evidence and set forth in the findings here, and we see no distinction which permits a different result from the Commissioner's determination. As to 1937, the taxpayers omitted from their returns an amount which was more than 25 per cent of the amount shown as gross income, and therefore the statutory period open to the Commissioner was five years, as provided in Section 275 (c). The determination was made within five years, and was therefore timely and not barred by the statute of limitations. Because of one error which the Commissioner concedes, namely, that the earnings of the corporation were $103,522.17 and not $105,908.43, as originally determined in the deficiency notice. Decision will be entered under Rule 50.